UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PHILLIP RANDALL,

    Petitioner,                                    Case No. 15-cv-14180

v.                                                     Honorable Thomas L. Ludington

SHANE JACKSON,

    Respondent.
_____/

## ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Phillip Randall, currently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, filed a *pro se* habeas corpus petition challenging his state convictions and sentences arising out of the robbery of a Big Boy and subsequent police chase. Petitioner alleges four grounds for relief: (1) the trial court erred by denying his motion to suppress his statement to a police officer; (2) the prosecution exceeded its authority by filing an information without the magistrate's return preceding it; (3) the trial court abused its discretion by not appointing substitute counsel, and counsel was not prepared for trial; and (4) Petitioner is entitled to have his sentence as a habitual offender vacated.

Respondent filed a motion to dismiss the habeas petition on the basis that Petitioner failed to exhaust his state remedies for his fourth claim. (Dkt. # 8). In response, Petitioner agreed to abandon his unexhausted sentencing claim. (*See* Petitioner's Response to Respondent's Mot. at 1-2, Dkt. # 10, Pg ID 710-11). This Court entered an order allowing Petitioner to delete his unexhausted claim and ordered Respondent to file an answer to Petitioner's remaining exhausted

claims. (Dkt. # 11). Respondent has filed an answer to the petition, asserting that the claims lack merit and/or are procedurally defaulted.

**I.**

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> [D]efendant entered the Big Boy, left, and returned 20 to 30 minutes later. Defendant pulled out a gun and told the cashier to give him the money from the cash register. Defendant also took money from the safe in the manager's office. After defendant left the building, a cook at Big Boy looked through a nearby window and saw a four-door red or burgundy car speeding away. Defendant was apprehended after a police chase that resulted in a collision with another vehicle. At the hospital, Defendant told Officer Csizmadia that he robbed the Big Boy.

*People v. Randall*, No. 314309, 2014 WL 1510157, at *4 (Mich. Ct. App. Apr. 15, 2014).

On October 23, 2012, the jury found Petitioner guilty, as charged, of the following: (1) armed robbery in violation of M.C.L. § 750.529; (2) conspiracy to commit armed robbery in violation of M.C.L. §§ 750.157a & 750.529; (3) third-degree fleeing and eluding a police officer in violation of M.C.L. § 257.602a(3)(a); (4) assaulting, resisting, or obstructing a police officer in violation of M.C.L. § 750.81d(1); (5) felon in possession of a firearm under M.C.L. § 750.224f; and (6) possession of a firearm during the commission of a felony ("felony firearm"), second offense, in violation of M.C.L. § 750.227b. On December 5, 2012, Petitioner was sentenced to five years' imprisonment for the felony-firearm conviction, one to fifteen years' imprisonment for the assault, resisting, and obstructing conviction, and twelve years, three months to thirty-five years for the remaining convictions.

Petitioner's conviction was affirmed on appeal. *Id.* The Supreme Court of Michigan denied his application for leave to appeal. *People v. Randall*, 497 Mich. 904; 856 N.W.2d 39

(2014). On November 20, 2015, Petitioner signed and dated his habeas corpus petition, and on November 24, 2015, the Clerk of the Court accepted the petition. *See* ECF No. 1. Respondent filed a motion to dismiss the habeas petition claiming that Petitioner raised the three claims to the Michigan Court of Appeals and an additional new issue that Petitioner presented for the first time to the Michigan Supreme Court. In response, Petitioner filed a reply abandoning his fourth claim, asking that his habeas petition proceed on the three claims raised on his appeal of right. This Court entered an order to allow Petitioner to dismiss his fourth claim and ordered Respondent to file an answer to the remaining three claims. (Dkt. # 11).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court erred in denying the defendant's motion to suppress his statement.

II. Under the Fourteenth Amendment of the United States Constitution appellant was denied the fundamental protection of due process of the law where the prosecution exceeded its authority in filing an information without a magistrate's proper return preceding it, contrary to law.

III. Appellant's Sixth and Fourteenth Amendment rights were violated where the trial court abused its discretion where (A) upon notice to the trial court the need to substitute counsel and where counsel requested to be removed, pursuant to the breakdown of communication and cooperation, proceeded without a full and fair hearing required by Michigan law denying the appointment of counsel and (B) appellant was forced to go to trial with counsel who did not have adequate time to prepare for trial.

**II.**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)(internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See Wiggins*, 539 U.S. at 520. Rather, that application must be objectively unreasonable. *Id.* This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."" *Renico v. Lett*, 559 U.S. 766, 773 (2010).

### III.

### A.

Petitioner contends that the trial court erred in denying his motion to suppress a statement he made to the police before he had been advised of his *Miranda* rights and because his morphine injections made the confession involuntary.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda,* 384 U.S. at 444.

The special procedural safeguards outlined in *Miranda* are required not merely when a suspect is taken into custody, but where a suspect in custody is subjected to interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 300 (1980). "'Interrogation', as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* *Miranda* warnings are required whenever a person in custody is subject either to express questioning or its "functional equivalent." *Id.,* at 300-301. For *Miranda* purposes, the term "interrogation" refers not only to express questioning of a suspect by law enforcement officials, but also to "any words or actions on the part of the police (other than those normally attendant to [an] arrest or custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

A review of the trial court record shows Petitioner was not subjected to custodial interrogation by the police following his arrest, but voluntarily and spontaneously made these statements to the police.

Prior to trial, the court conducted a *Walker* Hearing.[1] Warren Police Officer Kenneth Csizmadia testified that he was assigned to watch Petitioner at Detroit Receiving Hospital following the car crash involving Petitioner's car after the Big Boy robbery. Officer Csizmadia testified that Warren police policy mandates that prisoners be watched prior to arraignment. During Petitioner's overnight stay for observation, Petitioner inquired about his car, coat and hat. (Tr. 10/18/2012, pp. 9, 16 Pg ID 211, 218). Officer Csizmadia then testified as to his observations regarding Petitioner's awareness and a statement volunteered by Petitioner:

> Q. Do you know if the defendant was intoxicated or under the influence of any drugs when he was talking to you, when he was asking you questions?

---

[1] *People v. Walker*, 374 Mich. 331, 132 N.W.2d 87 (1965).

A. I'm not aware that he was, no.

Q. Now, aside from the questions regarding his clothing and his car, did he say anything else?

A. Yes.

Q. What did he say?

A. He indicated to me that he'd rear (sic) die in the hospital than die in jail. He indicated that he walked in Big Boy and didn't commit the robbery at first, but he walked back out to the car, he listened to his instigator which he was referring to as his buddy and he walked back in the Big Boy and committed the robbery, and then he kind of complained that his buddy was so stupid that threw you (sic) the gun out in a school parking lot.

Q. Now, just to be clear, you never asked any him questions to elicit these statements from the defendant.

A. No, it just came about of him asking me questions and just the conversation ensued.

(*Id*. at 11, Pg ID 213).

After reviewing the medical records entered into evidence at the time of the hearing, the trial court ruled as follows:

> The Court has reviewed the medical records, heard the testimony provided. The consideration for this Court is the voluntariness of the statement. There does not appear to be any issue of impropriety on the part of the police department. The police department -- the defendant was of course following the accident taken to the hospital where he was to be there for observation. His only complaint when he arrived at the hospital was pain to his upper lip. There were no other complaints or injuries that he articulated as a result of the accident. Because of the accident, there was concern for trauma and they wished to observe the defendant overnight is what they did. They kept him overnight and discharged him. He at the time of discharge of course he was alert and oriented, it would appear that he was equally alert and oriented at the time of admission, and that he was able to communicate his injury, the events that led up to his being brought to the hospital for his observation.
> ******************************************************************
> However, his statement that will he rather die jail -- I'm sorry -- a hospital than in jail would suggest that he has had prior experiences with the police.

> There was no question from the officer. The information was volunteered from the defendant. The detention here and the nature of detention was of the most accommodating that you can conceive. Here he's in a hospital setting tended to by doctors and nurses for his well being and not being denied any food, sleep or medical attention because it was all being provided. The Court does not find a basis for physical abuse in this case, that being -- the only issue, was he intoxicated or drugged, the Court does not believe that the drugs had an impact on his ability to communicate. Therefore, the statement will be admitted.

(*Id.* at 30-32, Pg ID 232-234).

Where a defendant makes a voluntary statement without being questioned or pressured by the police, the statements are admissible despite the absence of *Miranda* warnings. *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir.1997)(internal citations omitted); *see also Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002). "[I]t is well settled that a volunteered statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *United States v. Thornton*, 17 F. Supp. 2d 686, 693 (E.D. Mich. 1998). Moreover, "[T]he fact that a suspect is under the influence of drugs or medication is irrelevant if the suspect's statement was 'the product of a rational intellect and a free will.'" *Shackleford v. Hubbard,* 234 F.3d 1072, 1080 (9th Cir. 2000)(citing *Mincey v. Arizona,* 437 U.S. 385, 398 (1978)(internal quotation omitted); *Compare Beecher v. Alabama*, 389 U.S. 35, 37 (1967)(confession involuntary where petitioner signed a written confession prepared for him while he was "Still in a 'kind of slumber' from his last morphine injection, feverish, and in intense pain"). The Michigan Court of Appeals found that the morphine injections did not make petitioner's statements involuntary as follows:

> Although it was undisputed that defendant received six morphine injections, the prosecution noted that they occurred over a two-day period. In addition, there was no evidence that the morphine interfered with defendant's ability to freely and voluntarily make the statements. Officer Csizmadia testified that defendant did not appear to be intoxicated or under the influence of drugs when he made the inculpatory statements. Accordingly, we are not left with a definite and firm

conviction that the trial court erred in determining that defendant's statements were given voluntarily and freely.

*Randall*, 2014 WL 1510157, at *3.

Moreover, even assuming that the statement should have been suppressed, Petitioner is unable to establish that he is entitled to habeas relief in light of the fact that admission of this statement was harmless error at most. Harmless-error analysis applies to coerced or involuntary confessions. *Arizona v. Fulminante*, 279, 295 (1991). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

In the present case, there was sufficient evidence, absent Petitioner's confession, to sustain his convictions. It was undisputed from the evidence produced at trial that Petitioner entered and robbed the Big Boy and crashed the front end of his car while trying to escape. A car resembling Petitioner's vehicle was seen on police video with the gun thrown from the passenger side, Petitioner was positively identified at trial as the individual who committed the robbery by two eyewitnesses, and a large sum of money was found in his front sweatshirt pocket at the time of his arrest. (Tr. 10/19/2012, pp. 25, 44, 95-97). In light of the significant amount of evidence, the admission of Petitioner's confession was harmless error at most.

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to conclude that Petitioner's confession was voluntary. *See McCalvin v. Yukins,* 444 F.3d 713, 720 (6th Cir. 2006). Under the deference required by the AEDPA, and given the factors supporting a finding that Petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding Petitioner's confession to have been

voluntary was a reasonable application of federal law. *Id.* Because Petitioner made these statements to the police without being questioned or pressured by the police, Petitioner is not entitled to habeas relief on his first claim. *See Jones v. Smith,* 244 F. Supp. 2d 801, 812 (E.D. Mich. 2003).

**B.**

Petitioner next contends that he was denied due process when the prosecution exceeded its authority in filing an information without a magistrate's proper return preceding it.

Respondent contends that this claim is procedurally defaulted because Petitioner failed to object at trial.

Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against Petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the interests of judicial economy are best served by addressing the merits of Petitioner's second claim.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir. 1976); *see also Daniel v. McQuiggin,* 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009). The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F.App'x 473, 475 (6th Cir. 2001). Petitioner's claim that the trial court lacked

jurisdiction to try his case raises an issue of state law, because it questions the interpretation of Michigan law, and is therefore not cognizable on federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.,* 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23 F. App'x 259, 266 (6th Cir. 2001)(district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law). Even if the trial court lacked jurisdiction to try petitioner on these charges because the information was not filed with the proper return, such a violation of petitioner's state statutory rights does not warrant federal habeas relief. *See Tegeler v. Renico,* 253 F.App'x 521, 525-26 (6th Cir. 2007). Petitioner's claim is not cognizable, and he is not entitled to relief on his second claim.

## C.

Petitioner contends he was denied due process when the trial court abused its discretion by (A) denying his request for substitute counsel and (B) forcing him to go to trial with counsel who did not have adequate time to prepare for trial.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the

defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F.3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez,* 548 U.S. at 151-52)("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.")(internal citations omitted). Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.* at 663-64.

Petitioner stated on the record that he was dissatisfied with counsel at several pretrial hearings. The record reflects that Petitioner first stated that he and counsel were not on the same page because he lacked the complaint, information, and arrest warrant. The court responded by providing copies. (Tr. 10/9/2012, p.9). During the pretrial hearings, trial counsel indicated that he had reviewed the discovery, reviewed the video disks with Petitioner, and was prepared to proceed to trial (*Id.* at 4, 8; 10/18/2012, p. 5). Trial counsel lodged a formal motion to withdraw hours before Petitioner's trial stating that Petitioner requested substitute counsel and that Petitioner was uncooperative. (Tr. 10/18/2012, pp. 3-4). In response, the trial court judge asked Petitioner if he had anything to say regarding the motion. Petitioner stated "the guy is ineffective in my assistance" and "I really don't want him to be my lawyer because we not on the same page." (*Id.* at 4). Trial counsel again indicated that he was prepared to proceed to trial. (*Id.* at 5). Petitioner failed to establish good cause for substitution of counsel, where he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. *See United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996).

Petitioner offered no specific reasons to the state courts or to this Court to grant a continuance on the first day of trial to change attorneys. This was Petitioner's third attorney. *See* Dkt. # 9-2, p.7. The Sixth Circuit has noted that when "the granting of the defendant's request [to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 F.App'x 830, 834 (6th Cir. 2008)(quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)). The Sixth Circuit has rejected similar requests as being untimely. *See U.S. v. Trujillo,* 376 F.3d 593, 606-07 (6th Cir. 2004)(motion for substitution of counsel was untimely, coming only three days prior to

the start of the trial); *Jennings,* 83 F.3d at 148 (motion to continue to obtain new counsel untimely when it was made the day before trial). In the present case, Petitioner was not entitled to a continuance on the day of trial. *Whitfield,* 259 F.App'x at 834. Furthermore, the Michigan Court of Appeals reasonably found Petitioner was not prejudiced by counsel's representation. Trial counsel argued that Petitioner was not the perpetrator and that he was improperly identified. *Randall* 2014 WL 1510157, at *4. Trial counsel also effectively cross examined witnesses, raised objections, and moved for a directed verdict. The prosecution presented overwhelming evidence consisting of two eyewitnesses who identified Petitioner as the robber, video tapes of the police chase which ended with the car crash and Petitioner's apprehension, money recovered from Petitioner's person when he was arrested, and the admission to the officer that he committed the robbery. Petitioner is unable to show that he was prejudiced by the failure of the trial court to grant him a continuance to hire a new attorney, in light of the fact that he received effective assistance of counsel at trial. *See U.S. v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009). "The strained relationship" between petitioner and his attorney was not a "complete breakdown in communication" that prevented Petitioner from receiving an adequate defense. *Id.* The record in this case does not demonstrate that the disagreements between Petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005). Thus, the Michigan Court of Appeals' conclusion that the trial judge's denial of Petitioner's motion to substitute counsel did not violate his Sixth Amendment rights was not an unreasonable application of federal law. Petitioner is not entitled to federal habeas relief on his third claim. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011).

**IV.**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

**V.**

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

                                                 s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge

Dated: June 11, 2018

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 11, 2018.

                             s/Kelly Winslow
                             KELLY WINSLOW, Case Manager